UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JASPER WALLACE, et al.,**

     **Plaintiffs,**

**v.**                              **Case No. 8:05-CV-979-T-EAJ**

**CITY OF TARPON SPRINGS, et al.,**

     **Defendants.**

_____/

## ORDER

Before the court are Defendants' **Motion for Summary Judgment** (Dkt. 50), and Plaintiffs'

**Response in Opposition** (Dkt. 55).[1]

Plaintiffs Jasper Wallace, Douglas Wallace, Dexter Wallace ("the Wallaces"), and DAJ&B

Corporation ("the Corporation"), doing business as Johnnie's Sports Bar & Grill ("Johnnie's"),

assert a claim against Defendants City of Tarpon Springs ("the City") and Police Chief Mark

LeCouris ("Chief LeCouris") under 42 U.S.C. § 1983 based upon violations of Plaintiffs'

constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments.[2] Plaintiffs

allege that Defendants, in conjunction with the Tarpon Springs Police Department ("TSPD"),

unconstitutionally engaged in a racially motivated scheme to harass and interfere with Plaintiffs'

business to the point that Plaintiffs were forced out of business due to Defendants' discriminatory

---

[1] The parties consented to jurisdiction before the undersigned on October 19, 2006 (Dkt. 19). As set forth in a separate order, this court granted in part Defendants' motion to strike Plaintiff's response in opposition to Defendants' motion for summary judgment (Dkt. 64). Thus, the court will consider the appropriate portions of Plaintiffs' response in ruling on the instant motion.

[2] Count two of Plaintiffs' complaint for intentional interference of business relationships was dismissed on October 18, 2006 (Dkt. 60).

conduct. (Compl. ¶¶ 13, 25) Defendants move for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. For the reasons set forth herein, Defendants' motion for summary judgment is granted.

I.      **Factual Background**

The Wallaces are brothers and are African-American. (Compl. ¶ 4) Their parents, Johnnie and Susie Wallace, owned five lots at 711 South Safford Avenue in Tarpon Springs, on which sat a restaurant, seven rental units, and a house. (Douglas Wallace Dep. vol. I 15:7-16, Feb. 8, 2006; Jasper Wallace Dep. vol. I 9:7-11, May 10, 2006) The property is located close to the Pinellas Trail, a pedestrian trail which runs through Pinellas County. (Compl. ¶ 8) In the 1980s and early 1990s, Johnnie Wallace operated The Globe club in Tarpon Springs on the restaurant premises which Douglas Wallace managed. (Douglas Wallace Dep. vol. I 105:4-24; Holt Aff. ¶ 2; LeCouris Aff. ¶ 2) The City experienced significant problems with crime in and around The Globe in the 1980s and 1990s. (LeCouris Aff. ¶ 3) The property was the site of shootings, stabbings, fights, robberies, illegal drug activity, and the unlawful sale of alcohol to minors. (Id. at ¶¶ 3-8; Thornton Aff. ¶ 2) In 1991, the City obtained an injunction against The Globe in Pinellas County Circuit Court to prevent the club from being open for business on Sundays. (LeCouris Aff. ¶ 7; Holt Aff. ¶ 4) Apparently, The Globe closed in the early 1990s. After the club closed, Johnnie Wallace continued to lease and manage the rental properties. (Douglas Wallace Dep. vol. I 106:7-11; Jasper Wallace Dep. vol. I 9:7-10:21)

In December 1998, the Wallaces formed the Corporation in order to purchase the property from Johnnie and Susie Wallace with the intent of operating a restaurant/sports bar and the rental

2

properties at 711 South Safford Avenue. (Douglas Wallace Dep. vol. I 15:7-16) Jasper Wallace's role was to manage the day-to-day operations of Johnnie's and the rental properties; Douglas Wallace served as a director and officer of the Corporation.[3] (Id. at 49:6-21, 57:21-58:6)

In August 1999, the Corporation applied for an occupational license to operate a restaurant called Johnnie's; the license was issued in October 1999. (Vincent Aff. ¶ 4) Also in 1999, the Corporation applied for a conditional use zoning permit to sell beer and wine on the premises ("the conditional use permit") and for an occupational license to operate seven rental units on the property. (Vincent Aff. ¶ 5; Hartzog Aff. ¶ 3) The TSPD, which has the opportunity to review and comment on applications for conditional use permits to sell alcoholic beverages, opposed Plaintiffs' application for the conditional use permit because of the property's history with law enforcement problems and the property's location in a high-crime area of the City. (Holt Aff. ¶¶ 1, 6; LeCouris Aff. ¶ 12) The TSPD also opposed Plaintiffs' application because the general position of the TSPD, and Chief LeCouris, is that bars should not be located close to the Pinellas Trail. (Holt Aff. ¶ 7; LeCouris Aff. ¶ 12)

Plaintiffs' first application for a conditional use permit to sell beer and wine was denied by the Tarpon Springs City Commission ("the Commission") in a May 30, 2000 hearing in which the City's planning and zoning director presented evidence that the Corporation had not met certain conditions and recommended denial of the application.[4] (Douglas Wallace Dep. vol. II 138:20-

_____

[3] The record is unclear as to Dexter Wallace's role in the Corporation or any title he may have held in the property.

[4] The Commission tabled Plaintiffs' application for a conditional use permit on two occasions prior to the May 30, 2000 hearing in order for the City planning and zoning staff to work with Douglas Wallace to address problems in the application. (Vincent Aff. ¶¶ 5-9)

3

139:23, May 30, 2006; Vincent Aff. ¶¶ 5-9) During the hearing, the TSPD made a presentation to the Commission opposing Plaintiffs' conditional use application. (Vincent Aff. ¶ 9; LeCouris Aff. ¶ 14) The presentation included surveillance videotape of the property which the TSPD had conducted. (Id.) Plaintiffs did not appeal the City's initial denial of the conditional use permit. (Douglas Wallace Dep. vol. II 139:8-140:11; Jasper Wallace Dep. vol. II 3:13-4:6, 4:25-5:6, May 10, 2006)

The City approved the conditional use permit on the Corporation's second application and hearing before the Commission on September 22, 2001. (Vincent Aff. ¶ 10; Jasper Wallace Dep. vol. II 3:2-6) Until the corporation obtained a conditional use permit in September 2001, Plaintiffs had leased the restaurant to a third party from August 1999 to September 2001. (Jasper Wallace Dep. vol. II 3:7-12) Plaintiffs began operating the restaurant as Johnnie's after the Commission approved the conditional use permit; Plaintiffs operated Johnnie's from approximately 2002 to 2005. (Jasper Wallace Dep. vol. II 55:4-57:6)

The TSPD intentionally maintained a significant and visible police presence at or near Johnnie's. (LeCouris Aff. ¶ 20; Rivera Aff. ¶ 4) TSPD officers would park their patrol cars in the back parking lot of a Winn-Dixie store that was across the street from Johnnie's in order to be in a position to observe activity at or near the bar and along Safford Street. (LeCouris Aff. ¶ 21; Thornton Aff. ¶ 5) The TSPD would also conduct "walk-throughs" of Johnnie's where officers would enter the property to  maintain a visible police presence in the area. (LeCouris Aff. ¶ 24; Thornton Aff. ¶ 4) On February 29, 2000, Douglas and Jasper Wallace wrote Chief LeCouris a letter commending the TSPD for participating in a drug sweep in the neighborhood surrounding Johnnie's and expressing their satisfaction with the TSPD's actions to provide safety and security for their

community as well as the community's local business establishments. (LeCouris Aff. ¶ 23; Jasper Wallace Dep. vol. I 116:11-117:24) In June 2002, the Corporation changed its name to Tru-Dat Entertainment, Inc. ("TDE"), and continued the business operations of the Corporation. (Douglas Wallace Dep. vol. I 77:13-19)

The record is unclear as to exactly when Johnnie's officially ceased operations, but the Corporation's 2COP retail beverage license issued by the State of Florida Department of Business and Professional regulation expired on September 30, 2005. (Jasper Wallace Dep. vol. II 63:7-11; Vincent Aff. ¶ 12) As a result, the conditional use permit issued by the City expired on September 30, 2005, and therefore, the Corporation lost its conditional use approval to sell alcoholic beverages for on premise consumption. (DiPasqua Aff. ¶¶ 5, 12)

Regarding the rental units on the property, the City never issued Plaintiffs an occupational license to operate one or more rental units on the property. (Hartzog Aff. ¶¶ 4-5) Nonetheless, Plaintiffs continued to lease and manage the rental properties. (Douglas Wallace Dep. vol. II 145:7-22)

TDE was dissolved in September 2005. (Douglas Wallace Dep. vol. II 218:11-22) Since the dissolution, all of the property held in either the name of the Corporation or Douglas Wallace's name has been conveyed by quit claim deed to Jasper Wallace and the properties have either been sold or are for sale. (Douglas Wallace Dep. vol. I 15:10-18:1; Howard Dep. 12:23-13:14, July 12, 2006)

## II.    Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). In considering a motion for summary judgment,  the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Seroka v. Am. Airlines, Inc., 834 F. Supp. 374, 376 (S.D. Ala. 1993) (citations omitted).  The court must judge all evidence in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmoving party's favor.  Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted). However, the evidence must also be viewed within the scope of the evidentiary burden of the respective parties under the substantive law of the case. Id. (citing Anderson, 477 U.S. at 248). If, under this standard, the evidence can be considered such that a reasonable jury could find for the nonmoving party, summary judgment is inappropriate. Id. (citing Celotex, 477 U.S. at 324).

## III.   Discussion

Plaintiffs claim that Defendants unfairly targeted Plaintiffs' business for selective and discriminatory enforcement of the law based on Plaintiffs' race. Plaintiffs' allegations of selective

enforcement fall into two categories. First, Plaintiffs allege that the City unreasonably delayed in issuing Plaintiffs' conditional use permit to sell beer and wine while at the same time approving the applications of similarly situated non-minority businesses. Second, Plaintiffs allege that once Johnnie's was open for business with its conditional use permit to sell beer and wine in place, Defendants engaged in a racially motivated scheme to harass the bar and its patrons to the point of forcing Plaintiffs out of business. The court will address the merits of these claims separately.

### A.      Unreasonable Delay in Issuing Conditional Use Permit

Plaintiffs allege that the City's approximate two-year delay in issuing their conditional use permit to sell beer and wine was racially motived in that the City approved other non-minority sports bar and grill conditional use applications in 1998 and 1999 quickly, with minimum effort by the other owners. (Compl. ¶ 9) Defendants argue that the City treated applicants for conditional use permits to sell alcohol in a racially neutral manner. Defendants cite the affidavit of Renee Vincent, the City's Planning & Zoning Director, which states that the City similarly denied a Caucasian restaurant owner's application to sell beer and wine during the same time period and that the applicant did not obtain approval until 1.5 years after his initial application. (Vincent Aff. ¶ 11)

Plaintiffs' claim of unreasonable delay fails for several reasons. First, Plaintiffs failed to exhaust their remedies under state law with regard to the City's initial denial of the conditional use permit. Florida law provides Plaintiffs with an adequate post-deprivation remedy because the City's denial of Plaintiffs' conditional use application at the May 30, 2000 hearing was quasi-judicial in nature. See Bd. of County Comm'rs of Brevard County, Fla. v. Snyder, 627 So. 2d 469, 474 (Fla. 1993) (citations omitted) (the character of the hearing determines whether or not board action is legislative or quasi-judicial; legislative action results in the formulation of a general rule or policy,

where judicial action results in the application of a general rule of policy). Florida law provides that the circuit court may review quasi-judicial decisions of local boards by petition for certiorari. Id. at 474-75; see also Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995). A petition for certiorari to a circuit court must be filed within thirty days of the quasi-judicial action to be reviewed. Fla. R. App. P. 9.100(c).

The City denied Plaintiffs' initial application on the grounds that Plaintiffs did not meet the criteria for approval set forth in the City's Land Development Code ("LDC"). (Vincent Aff. ¶¶ 8, 9) The record reveals that Plaintiffs did not appeal the City's initial denial of their conditional use application; on the contrary, Plaintiffs worked with the City from 1999 to 2001 in order to correct the problems cited by the City in denying Plaintiffs' application. (Jasper Wallace Dep. vol. II 3:13-5:6) The City issued the conditional use permit in 2001. Because Plaintiffs did not exhaust the adequate due process remedy available to them under state law, there has been no federal due process violation. See Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000) (where state law provides a plaintiff with an adequate post-deprivation remedy, federal court may hold that there has been no federal due process violation).

Notwithstanding, Plaintiffs have failed to show that a genuine issue of material fact exists as to whether the City selectively enforced provisions of the LDC based on Plaintiffs' race. When unequal administration of a facially neutral law results from selective enforcement, a showing of intentional discrimination is required. E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Plaintiffs have failed to even address in their response the claim that the City's initial denial of their conditional use application was racially motivated, nor have Plaintiffs pointed to *any* evidence in the record which would create a genuine factual issue as to whether the City's denial

8

of their conditional use permit was racially motivated.[5] Any opinion testimony by one of the parties is merely speculative and does not meet Plaintiffs' burden.[6]   Summary judgment is therefore warranted as to this claim.

### B.      Racially Motivated Scheme to Force Plaintiffs Out of Business

On their § 1983 claims, Plaintiffs must show the violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. Cummings v. DeKalb County, 24 F.3d 1349, 1355 (11th Cir. 1994) (internal quotation marks and citations omitted). Plaintiffs allege that once Johnnie's obtained the conditional use permit to sell beer and wine, the TSPD, at the direction of Chief LeCouris, engaged in a racially motivated scheme to harass the business and its patrons to the point that customers were driven away and Plaintiffs were forced to close the business. Plaintiffs allege that Defendants carried out this plan by selectively enforcing the law against Plaintiffs' business and its patrons to the exclusion of similarly situated non-minority owned businesses. According to Plaintiffs, Defendants deprived them of their constitutional rights under the First, Fourth, Fifth,

---

[5] Similarly, Plaintiffs do not address in their response the issues of the City's timing in issuing the occupational license or the City's denial of Plaintiffs' occupational license to operate the rental units on the property. There is no evidence that the City unreasonably delayed in issuing Plaintiffs an occupational license; that license was granted in October 1999, two months after Plaintiffs' application. Regarding the license to operate the rental properties, there is no evidence that the denial was racially motivated. The record shows that the City denied Plaintiffs' application for valid reasons based on the City's zoning regulations. (Hartzog Aff. ¶ 4) Plaintiffs point to no evidence in the record that suggests otherwise.

[6] Douglas Wallace stated in his deposition that he did not know if the problems Chief LeCouris cited at the hearing were racially motivated and that he thought it was a combination of race, an ongoing feud with the Wallace family, and the City's desire to purchase the property. (Douglas Wallace Dep. vol. II 150:16-152:5, 158:24-160:4) Conclusory statements such as these opinions do not create a genuine issue of material fact.

Sixth, and Fourteenth Amendments.

### 1.    **Untenable Claims**

As a preliminary matter, the court finds that Plaintiffs' claims under the First, Fourth, Fifth, and Sixth Amendments fail as a matter of law.

First, Plaintiffs allege that Defendants' conduct violated Plaintiffs' and their customers' First Amendment rights of association and to be free from police harassment and intimidation in their business associations (Dkt. 1 at 10). However, Plaintiffs' First Amendment claim is not clearly articulated. At the outset, Plaintiffs appear to allege that Defendants' conduct violated patrons' right to associate at Plaintiffs' place of business, Johnnie's. In Plaintiffs' response, however, they argue that the alleged improper police conduct by the TSPD was "the manifestation of racial animus toward [Plaintiffs]  based on their criticism of the police due to the false arrest of their father, violating their first amendment rights" (Dkt. 55 at 15). Regardless of whether Plaintiffs are alleging the First Amendment right of association of their patrons or Plaintiffs' First Amendment right of free speech, both claims fail.

The Supreme Court has recognized two types of protected freedom of association: "choices to enter into and maintain certain intimate human relationships" and the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989) (internal quotation marks and citations omitted). Large business enterprises lack qualities that give rise to this type of constitutional protection.  Roberts v. United States Jaycees, 468 U.S. 609, 619-20 (1984). The Eleventh Circuit has held that "there is no generalized right to associate in alcohol-purveying establishments with other adults." Gary v. City of Warner Robins,

Ga., 311 F.3d 1334, 1338 (11th Cir. 2002) (citation omitted).

Plaintiffs' argument that their criticism of the TSPD due to the false arrest of their father resulted in the allegedly improper police conduct is raised for the first time in Plaintiffs' response to Defendants' motion for summary judgment and is not properly before the court (Dkt. 55 at 15).[7] Furthermore, Plaintiffs fail to point the court to any evidence in the record which supports Plaintiffs' allegation of First Amendment violations. Plaintiffs' statement that the TSPD targeted their business based on their criticism of the police is conclusory and completely unsubstantiated. Summary judgment is therefore proper as to Plaintiffs' First Amendment claim.

Likewise, summary judgment is proper as to Plaintiffs' claim that Defendants violated their Fourth Amendment right to be free from police harassment and intimidation. Plaintiffs allege that TSPD officers repeatedly stopped patrons coming in and out of Johnnie's, demanded to see patrons' driver's licenses and vehicle registrations, and searched patrons and their vehicles without consent in an effort to intimidate and harass patrons. "Freedom from unreasonable searches and seizures, however, is a personal right which cannot be asserted vicariously." Crosby v. Paulk, 187 F.3d 1339, 1346 n.10 (11th Cir. 1999). Therefore, Plaintiffs have no standing to assert Fourth Amendment violations with respect to their patrons.[8]

Plaintiffs also fail to state cognizable claims under the Fifth and Sixth Amendments and do not articulate what Fifth and Sixth Amendment violations they allege. There is no evidence that the

---

[7] While Plaintiffs' complaint states that Chief LeCouris "has personal animosity toward the Wallace family due to legitimate criticism of the police by the deceased Johnnie Wallace and his sons . . . .", the only First Amendment violation alleged is a right of association. (Compl. ¶¶ 6, 24)

[8] Moreover, Plaintiffs point to no evidence in the record which would create a genuine factual issue as to whether the individual Plaintiffs were ever improperly stopped or searched by the TSPD in connection with their business activities.

TSPD ever instituted any criminal proceedings against Plaintiffs in connection with the activities alleged in the complaint. Because there are no triable issues of fact presented as to the Fifth and Sixth Amendments, summary judgment is warranted as to those claims as well.

### 2.   Fourteenth Amendment Claims

Plaintiffs allege that Defendants' conduct unconstitutionally interfered with their liberty interest to conduct a lawful occupation of their choosing and their property interest to utilize a lawful business license or beer and wine license (Dkt. 1 at 10). Plaintiffs further allege that Defendants' conduct violated Plaintiffs' and their customers' Fourteenth Amendment rights to be free from Defendants' selective stalking, harassment, warrantless searches and seizures, and right to equal police treatment of non-minority enterprises (Dkt. 1 at 11). While poorly articulated, Plaintiffs' Fourteenth Amendment claims can be best categorized as arguing a substantive due process violation and equal protection violations based on selective law enforcement activities.

A § 1983 suit against a governmental entity may not be premised only on a theory of respondeat superior; the governmental entity must deprive individuals of civil rights pursuant to a governmental policy or custom. See Mandel v. Doe, 888 F.2d 783, 791 (11th Cir. 1989). "In order to establish a policy or custom sufficient to impose municipal liability, it is generally necessary to show a persistent and widespread practice." Fla. Country Clubs, Inc. v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., 98 F. Supp. 2d 1356, 1363 (M.D. Fla. 2000) (citation omitted). "[A] plaintiff must show that the municipality had actual or constructive knowledge of the acts complained of"; a policy or custom is not demonstrated through random acts or isolated instances. Id. (citation omitted).  "Discriminatory purpose . . . implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of

action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Wayte v. United States, 470 U.S. 598, 610 (1985) (internal quotation marks and citations omitted). Therefore, it is not enough for Plaintiffs to show that the conduct of individual TSPD officers or Chief LeCouris violated Plaintiffs' Fourteenth Amendment rights; in order to hold the City liable, Plaintiffs must demonstrate that the City had a policy or custom (or constructive knowledge thereof) to selectively enforce the law against Plaintiffs' business. Further, Plaintiffs must demonstrate more than random police acts or isolated instances in order to establish a policy or custom.

Specifically, Plaintiffs allege that the City and Chief LeCouris, through their agents, officers, and employees formulated a plan to harass, intimidate, interfere with, and close Plaintiffs' business because Plaintiffs are African-American. Plaintiffs allege that the TSPD repeatedly videotaped the bar and that officers repeatedly parked  numerous police vehicles directly across the street from Johnnie's in an effort to intimidate and discourage customers from patronizing Plaintiffs' business. Plaintiffs contend that the TSPD would regularly enter the bar during business hours. According to Plaintiffs, the TSPD would stop customers walking to and from the bar and regularly stop customers' vehicles as they were driving to and from the bar. Allegedly, the TSPD also interfered with Plaintiffs' renters living on the property. Plaintiffs also maintain that the City code enforcement officials closely monitored and visited the property for compliance with applicable ordinances while the City did not do so with respect to Caucasian and Greek establishments. Plaintiffs contend that TSPD officers would regularly disband groups of people standing on the sidewalk in front of the bar and on the Pinellas Trail; Plaintiffs also allege that TSPD officers would empty the bar on the pretext that there were too many people in the bar. According to Plaintiffs, the City set up roadblocks and

barricades that blocked access to the bar and also ignored Plaintiffs' complaint about a sewage smell around the property. Finally, Plaintiffs allege that the TSPD interfered with the sale of the properties and/or the business once the business was closed by discouraging purchasers.

Defendants acknowledge an intentional police presence around Plaintiffs' business but deny that their presence was racially motivated or that it was the policy or custom of the TSPD to selectively enforce the law against Plaintiffs.

### Selective Enforcement Claim

"To prevail on an equal protection claim of selective enforcement, [Plaintiffs] must demonstrate that (1) [they] were singled out for prosecution while others similarly situated were not prosecuted, and (2) [Defendants'] enforcement of the law against them was invidious or in bad faith." Wilbesan Charter Sch., Inc. v. Sch. Bd. of Hillsborough County, Fla., 447 F. Supp. 2d 1292, 1295 (M.D. Fla. 2006) (citing Lanier v. City of Newton, Ala., 842 F.2d 253, 256 (11th Cir. 1988). "The invidiousness requirement is satisfied only if it can be established that the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious discrimination or interference with the legitimate exercise of constitutional rights." Lanier, 842 F.2d at 256 (internal quotation marks and citation omitted).

In the instant case, Chief LeCouris admits that he opposed Johnnie's application to obtain a conditional use permit for beer and wine from the time the application was filed; however, this was due to the property's location in an area with one of the highest crime rates in the City, including one of the highest rates of illegal drug sales, and the property's long history of law enforcement problems. (LeCouris Aff. ¶ 12) Chief LeCouris acknowledges that there was an intentional police presence in the area in which Johnnie's was located. (Id. at ¶ 20). However, the TSPD maintained

that presence because the area in which Johnnie's is located has one of the highest rates of criminal activity, illegal drug sales, lawlessness, and low level disorder in the City. (Id.; Holt Aff. ¶ 3; Rivera Aff. ¶ 4; Thornton Aff. ¶¶ 2, 4)

It is the policy of the TSPD to concentrate its resources and efforts on areas of the City that have the highest rates of crime and criminal wrongdoers. (LeCouris Aff. ¶ 19) Some of the tactics which the TSPD employs are officer "walk-throughs" of establishments, officers approaching and speaking with persons on the street to inquire regarding their identify and activities, and officers stopping or stopping and frisking persons when there is a reasonable suspicion of criminal activity. (Id.) TSPD officers would park across the street from Johnnie's in a Winn-Dixie parking lot to be in a position to observe activity at or near the bar and along Safford Street. (Id. at ¶ 21; Thornton Aff. ¶ 5) However, Johnnie's is not the only establishment in the neighborhood that has received such police attention and the neighborhood in which Johnnie's is located is not the only neighborhood in the City where the TSPD intentionally maintains a highly visible police presence. (LeCouris Aff. ¶ 20; Thornton Aff. ¶ 10)

None of the evidence which Plaintiffs cite in their response raises an inference that the police activity in or around Johnnie's was improper, pervasive, or rose to the level of harassment.[9] The affidavit of Mark Howard, a Caucasian man, states that he was stopped two times by the TSPD after leaving the bar. (Howard Aff. ¶ 5) Plaintiffs also cite to the affidavit of Noah Driver, an African-American man, which states that Driver was pulled over in his vehicle by the TSPD for twenty minutes on the premise of a light not working. (Driver Aff.) However, the affidavit does not state

---

[9] Compare, e.g., P.A.B. v. Stack, 440 F. Supp. 937 (S.D. Fla. 1977) (four-month barrage of police activity specifically calculated to cause financial disaster to owners of adult book stores met requisite standard of harassment).

that Driver was stopped anywhere in the vicinity of Johnnie's.[10] According to Plaintiffs, Althea Jones' testimony establishes an inference of harassment because on two occasions, police "emptied the bar"; one incident was after a fight between two men. (Jones Dep. 10:8-25) There is no evidence that the TSPD's conduct in any of these events was improper, or that these events were anything more than "isolated instances."

Plaintiffs also cite testimony from Jasper Wallace who saw TSPD officers stop customers going to and from the bar approximately 50 times over six years. (Jasper Wallace Dep. vol. 1 117:25-119:25) Plaintiffs further contend that Jasper Wallace saw the police park multiple cars outside Johnnie's twice per week for five or six years, with as many as five cars at a time, "whenever [they got] a nice crowd." (Id. at 112:12-116:10). However, this evidence is insufficient to raise an inference that any of these police activities were improper or that the frequency of these activities was so intense as to constitute a campaign of harassment.

Finally, there is no evidence that the TSPD's officer "walk-throughs" of the bar rose to the level of harassing. According to Plaintiffs, Caucasian officers would come into the bar in uniform and "either look around or sit there and wait." (Golden Dep. 13:11-14:20) Jasper Wallace testified that TSPD officers entered the bar 25 times over a period of four or five years. (Jasper Wallace Dep. vol. II 8:15-9:24)

Police officers entering a bar during business hours is not unlawful. See Fla. Stat. § 562.41 (2006) (law enforcement officers may enter establishments of any kind for the purpose of

---

[10] In any event, the probative value of Driver's affidavit is seriously undercut by his subsequent deposition testimony denying any recollection of the incidents referred to in his affidavit. (See Dkt. 72 at 8) As stated by the district judge in the court's order denying Plaintiffs' motion for summary judgment, Driver's testimony advances no evidence to support Plaintiffs' claims of racial discrimination (Dkt. 60).

determining whether the alcoholic beverage laws are being violated); <u>Colonnade Catering Corp. v.</u> <u>United States</u>, 397 U.S. 72, 76-77 (1970) (liquor industry has always been subject to close supervision and inspection). In addition, there is no evidence that the police officers conducted stops or searches inside the bar or that they conducted any type of full-scale administrative raid of the bar. <u>Compare, e.g.</u>, <u>Alexis, Inc. v. Pinellas County, Fla.</u>, 194 F. Supp. 2d 1336, 1348 (M.D. Fla. 2002) (Sheriff Department's custom and practice of effecting mass custodial arrests could constitute harassment and bad faith law enforcement if carried out with improper motives). None of the evidence cited by Plaintiffs gives rise to an inference that the TSPD's presence in and around Johnnie's reached the level of harassment.[11]

Even assuming Plaintiffs had shown that the TSPD activity in and around Johnnie's reached a level of harassment, Plaintiffs have failed to successfully show that Johnnie's was selectively targeted for law enforcement activity. Defendants' evidence shows that other bars in the neighborhood and in the City were subjected to the same levels of police presence. (LeCouris Aff. ¶ 20, 24; Thornton Aff. ¶ 10) To defeat summary judgment, Plaintiffs must point to evidence in the record which demonstrates that they were "singled out" by the TSPD. While Plaintiffs allege that Caucasian and Greek-owned bars were treated differently, the record only reveals two bars which Plaintiffs allege were treated differently: the "Irish Bar" and "Neptune's Bar." In their response, Plaintiffs declare that "the City's law enforcement techniques were not applied unequally [sic] but out of racial animus toward the Wallace(s), as the same action(s) were not taken at the white run Neptune's Bar and Irish Bar on the same bike trail two(2) blocks away" (Dkt. 55 at 8). However,

---

[11] It is worth noting that in February 2000, Plaintiffs wrote Chief LeCouris a letter commending the TSPD for their police presence in the area and their efforts to eradicate crime from the area. (LeCouris Aff. ¶ 23; Jasper Wallace Dep. vol. I 116:11-117:24)

Plaintiffs point to no evidence in the record to establish that either the Irish Bar or Neptunes Bar may be considered "similarly situated" for the purposes of an equal protection analysis. See 2025 Emery Highway, L.L.C. v. Bibb County, Ga., 377 F. Supp. 2d 1310, 1350 (M.D. Ga. 2005) (single statement by employee of the Sheriff's Office opining that "Club South Beach" would be the business in the county "most similar to Club Exotica" was insufficient to establish that the two venues were "similarly situated" as a matter of law). Therefore, Plaintiffs' equal protection claim based on selective enforcement cannot stand.[12]

Even assuming, arguendo, that Plaintiffs could show that the TSPD targeted Johnnie's to enforce the law to the exclusion of other similarly situated businesses, proof that the TSPD's actions were racially motivated is also lacking. The Howard Affidavit's statements that the TSPD's stops of Howard were racially motivated are merely conclusory allegations. Plaintiffs' other cited evidence, including Chief LeCouris' deposition testimony, does not provide an inference of discriminatory motive or discriminatory effect based on Plaintiffs' race. Because Plaintiffs have not met their burden of identifying portions of the record that create a genuine issue of material fact as to whether the TSPD had a racially motivated custom or policy to selectively enforce the law against Plaintiffs and their business, Defendants are entitled to summary judgment on Plaintiffs' claim of selective law enforcement.

**Due Process Claim**

"The substantive due process component of the Due Process Clause protects those rights that

---

[12] Similarly, Plaintiffs have failed to develop their argument that City code enforcement officials closely monitored and visited Plaintiffs' property for compliance with applicable ordinances but did not do so with respect to Caucasian and Greek-owned establishments. Again, this claim is conclusory and wholly unsubstantiated.

are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" <u>Greenbriar Village, LLC v. Mountain Brook, City</u>, 345 F.3d 1258, 1262 (11th Cir. 2003) (quoting <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc), <u>cert</u>. <u>denied</u>, 513 U.S. 1110 (1995)). The process for analyzing a substantive due process claim is two-fold. First, the court considers whether Plaintiffs have alleged a deprivation of a right that is, objectively, "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." <u>Williams v. Attorney Gen. of Ala.</u>, 378 F.3d 1232, 1239 (11th Cir. 1994), <u>cert</u>. <u>denied</u>, 543 U.S. 1152 (2005)  (internal quotation marks and citations omitted). Second, in substantive due process cases, courts require a "careful description" of the asserted fundamental right. <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993); <u>see, e.g.</u>, <u>Tinker v. Beasley</u>, 429 F.3d 1324, 1327 (11th Cir. 2005). To meet this burden, Plaintiffs must demonstrate that the government action is "conscience-shocking." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998).

    The Supreme Court has recognized that the due process clause protects a liberty or property interest in pursuing the "common occupations or professions of life." <u>Benigni v. City of Hemet</u>, 879 F.2d 473, 478 (9th Cir. 1988) (quoting <u>Schware v. Bd. of Bar Examiners</u>, 353 U.S. 232, 238-39 (1957)).  In their response, Plaintiffs do not attempt to identify the relevant standard to be applied to such claims, neither do they identify how Defendants' actions have subjected Plaintiffs to a substantive due process violation. Assuming that Plaintiffs' substantive due process claim is that the TSPD's alleged actions discussed above "shock the conscience" and interfered with Plaintiffs' individual rights to conduct a business as guaranteed by the Constitution, such a claim is also without merit.

The TSPD has a valid public purpose in halting or deterring criminal conduct; it is undisputed that Johnnie's was located in an area of the City with the highest incidences of criminal activity. Plaintiffs have not shown that the TSPD's policy of concentrating law enforcement activities in the area which Johnnie's was located is so arbitrary or irrational as to violate due process. See Lingle v. Chevron, U.S.A., Inc., 544 U.S. 528, 542 (2005) (citation omitted) (stating that a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause). Plaintiffs have presented no compelling legal or factual basis for a substantive due process violation and they have shown no deprivation of a right protected by the Constitution.[13] Defendants are therefore entitled to summary judgment on Plaintiffs' substantive due process claim.

Because the court finds that Defendants are entitled to summary judgment on Plaintiffs' substantive § 1983 claims, it is not necessary for the court to reach the issue of whether Defendant LeCouris is entitled to qualified immunity on these claims.  See Fla. Country Clubs, Inc., 98 F. Supp. at 1364 (the court should address the substance of a plaintiff's § 1983 claims before addressing an issue of qualified immunity). Indeed, the issue was not raised in Defendants' motion for summary judgment.

**IV.    Conclusion**

When considering the motion, record, and the evidence before the court in the light most

---

[13] Plaintiffs state in their complaint that Defendants' conduct constituted a "taking" of the property for which Plaintiffs had not been justly compensated but Plaintiffs have never articulated or developed this statement. Similarly, Plaintiffs' allegation that Defendants interfered with the potential sale of the property is wholly unsubstantiated. There is no evidence in the record that Plaintiffs have not been able to sell their property based on police interference; to the contrary, the record reveals that in July 2006, Plaintiffs' property was under contract to be sold for $899,000. (Howard Dep. 12:23-13:24, 25:19-26:15)

favorable to the non-moving party, the court finds that no genuine issues of material fact exist as to whether Defendants unconstitutionally targeted Plaintiffs' business for selective and discriminatory enforcement of the law based on Plaintiffs' race.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED**:

(1)     Defendants' motion for summary judgment (Dkt. 50) is **GRANTED**.

(2)     The Clerk is **DIRECTED** to enter judgment in favor of Defendants, dismiss the case and terminate all pending motions.

**DONE AND ORDERED** in Tampa, Florida this 12th day of January, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge